# Richmond.

## LESLIE D. MEASELL v. H. N. BARUCH.

March 21, 1929.

The opinion states the case.

· *L. P. Matthews* and *C. S. Smith, Jr.*, for the plaintiff in error.

*George P. De Hardit* and *J. Boyd Sears*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Gloucester county.

On June 10, 1927, Leslie D. Measell instituted attachment proceedings against H. N. Baruch, a nonresident land owner. Baruch answered the attachment petition of the plaintiff, and on the issue thus joined the case was tried by a jury, which resulted in a verdict for the defendant.

The plaintiff is a real estate broker residing in Norfolk, Virginia. The defendant, a resident of the State of New York, is the owner of a farm in Gloucester county, known as "Eagle Point." For a number of years plaintiff had this farm listed for sale. In March, 1927, he interested one Colonel James G. Darden in the property, with the result that on April 11, 1927,

Darden gave plaintiff, for presentation to Baruch, the following letter:

"NEW YORK, N. Y., APRIL 11, 1927.

"MR. HARTWIG N. BARUCH,

"Maxera, Gloucester County, Va.

"DEAR SIR:

"I hereby make an offer to purchase farm owned by you situated in Gloucester county, Virginia, known as 'Eagle Point,' consisting of approximately 510 acres, 200 acres in woodland, 200 acres in a high state of cultivation and the balance, 110 acres, in pasture and park around the mansion house, including all buildings thereon. This property is referred to in the attached circular.

"There is hereto attached and made a part of this offer an inventory of personal property in the mansion house at Eagle Point, and an inventory of personal property at Eagle Point, consisting of rolling stock, farm machine, farm implements, etc. There is included in the inventory last referred to the number and character of buildings also situated upon Eagle Point. *It is represented that the inventory is substantially correct.*

"It is understood and agreed that the contract will provide for the delivery of the property described in the attached circular and also shall contain articles covered by the inventory, which is also attached.

"The price I am to pay for this property is $65,000.00, and it is further understood and agreed that Leslie D. Measell, of Norfolk, Virginia, is the broker in the transaction, and that you will assume and pay his commissions on this sale.

"The terms of sale are to be $5,000.00 upon the signing of a contract for the purchase of this property,

the balance of $60,000.00 to be paid in cash upon the delivery of the deed not later than sixty days from date.

"It is further understood and agreed that the contract shall provide that I shall receive a full covenant warranty deed for this property, and also a guaranteed title showing the property to be free and clear of any and all liens, including taxes accrued to the date of title closing.

"It is also understood and agreed that this sale is to include all the appurtenances and machinery now on the property, including gas, electric light and water power plants.

"In consideration of making the $5,000.00 payment upon the signing of the contract, I am to be granted immediate possession of the said property and the full use thereof.

"It is further understood and agreed that in case you cannot deliver satisfactory title to this property, the deposit aforesaid is to be returned to me with interest at six per cent. per annum, and I am not to pay any rent or other charge for the temporary occupation of the property.

"This offer is to be accepted by you not later than twelve o'clock noon today, and your signing the copy of this letter will constitute your acceptance of this offer, which is to be delivered to Mr. Henry F. Whitney, Trust Officer of Empire Trust Company, 120 Broadway, New York, N. Y.

"Very truly yours,

"(Signed) JAMES G. DARDEN.

"I hereby accept the foregoing offer and agree that a contract of sale covering said property will be immediately prepared.

"(Signed) HARTWIG N. BARUCH."

That portion of the letter indicated by italics was added by Baruch prior to his acceptance of the offer of purchase upon the part of Darden.

For reasons disclosed by the record, Darden refused to comply with his offer of purchase, whereupon plaintiff brought this action against Baruch.

It is assigned as error that the court erred in giving, upon motion of the defendant, the following instruction: "The court instructs the jury as a matter of law that unless they shall believe from the evidence that a formal contract was entered into between Darden and Baruch for the sale of the Eagle Point property as provided for in the paper writing of April 11, 1927, marked plaintiff's exhibit 'A', then they must find for the defendant, H. N. Baruch."

It is also assigned as error that the court erred in refusing to give, upon motion of the plaintiff, the following instruction: "The court instructs the jury that the contract of April 11, 1927, entered into between Darden as the purchaser and Baruch as the seller for the purchase and sale of Eagle Point was a valid, subsisting contract from the moment said contract was signed, delivered and with the amendment thereto accepted by Darden."

In Clark on Contracts, page 36, the general rule is stated thus: "In order that the acceptance of an offer may result in a binding contract, it must be absolute and identical with the terms of the offer; or, as it has been expressed, 'an acceptance to be good must in every respect meet and correspond with the offer, neither falling within nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand.' "

In *Eliason* v. *Henshaw*, 4 Wheat. 225, 4 L. Ed. 556,

it is said: "It is an undeniable principle of the law of contracts, that an offer of a bargain by one person to another, imposes no obligation upon the former, until it is accepted by the latter, according to the terms in which the offer was made. Any qualification of, or departure from, those terms, invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open, and imposes no obligation upon either."

This same doctrine has been approved by this court. In *Crews* v. *Sullivan*, 133 Va. 478, 113 S. E. 865, West, J., said: "It is settled law that an offer may be withdrawn at any time before acceptance. A proposition must be accepted before it is withdrawn or it becomes inoperative. There must be no variance between the acceptance and the offer. Accordingly, a proposal to accept, upon terms varying from those offered is a rejection of the offer and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested. The other party, having once rejected the offer, cannot afterwards revive it by tendering an acceptance of it. Having in effect rejected the offer by his conditional acceptance, the offeree cannot subsequently bind the offeror by an unconditional acceptance. 6 R. C. L., page 608, section 31; *Baird* v. *Pratt*, 148 Fed. 825, 78 C. C. A. 515, 10 L. R.·A. (N. S.) 1116; *Maclay* v. *Harvey*, 90 Ill. 525, 32 Am. Rep. 35; *Egger* v. *Nesbit*, 122 Mo. [667] 637, 27 S. W. 385, 43 Am. St. Rep. 596; *Hutchinson* v. *Bowker*, 5 M. & W. 535; *Hyde* v. *Wrench*, 3 Beav. 336."

Primarily, it is the duty of the court to decide whether the construction to be given a written in-

strument is a question for the court or for the jury. This duty the trial court offered to discharge in the first instance, as shown by the record. There was, however, no formal construction of the paper until the completion of the evidence, when the court, by the instructions given and refused, did in effect construe the written instrument.

It is the contention of the plaintiff that the court erred in its construction of the letter of April 11, 1927—(1) Because it contained the whole agreement between the parties; (2) because it was full and complete on its face; (3) because the parties themselves acted upon the contract as if they each considered it binding.

■■ There was a direct conflict in the evidence on the question of whether or not the altered contract was accepted by Darden. This feature of the case will be discussed later. Whether or not the paper relied on by the plaintiff (assuming that it was accepted by Darden), was such a contract as entitled him to the commissions sued for, we must first determine.

In construing an agreement somewhat similar to the agreement here involved, Judge Harrison, in *Boisseau* v. *Fuller*, 96 Va. 46, 30 S. E. 457, said: "The whole question is one of intention. If the parties are fully agreed, there is a binding contract, notwithstanding the fact that a formal contract is to be prepared and signed; but the parties must be fully agreed and must intend the agreement to be binding. If though fully agreed on the terms of their contract, they do not intend to be bound until a formal contract is prepared, there is no contract, and the circumstance that the parties do intend a formal contract to be drawn up is strong evidence to show that they did not intend the previous

negotiations to amount to an agreement. Clark on. Contracts, page 38.

"Words of present demise will generally make an actual lease, if no future or more formal document appears to have been intended; and especially if possession is taken under it. But the use of such words, however strong, will not constitute the instrument a lease, if it can be clearly inferred from the rest of the paper that the parties had it in contemplation to enter into a future lease. Thus an instrument containing words of present demise, with an agreement that the lessee shall take possession immediately, and that a lease shall be subsequently executed, operates only as an agreement for a lease. Taylor on Landlord and Tenant, section 39."

While it is true that the price for which the property was to be sold is fixed at $65,000.00, it is also true that the terms of purchase were to be fixed by a future contract. This is clearly indicated by the following language: "The terms of sale are to be $5,000.00, upon the signing of a contract for the purchase of this property, the balance of $65,000.00 to be paid in cash upon the delivery of the deed not later than sixty days from date." The terms of sale are conditioned upon the signing of a future contract.

If it can be said that the offer to purchase is complete, then Darden can be forced to take a deed without covenants of title. That such a result was not contemplated is evidenced by this language: "It is further understood and agreed that the contract shall provide that I shall receive a full covenant warranty deed for this property, and also a guaranteed title showing the property to be free and clear of any and all liens, including taxes accrued to the date of title closing."

The paper contains this further stipulation: "In consideration of making the $5,000.00 payments upon the signing of the contract, I am to be granted immediate possession of the said property and the full use thereof."

That the clear presumption is in favor of the conclusion that neither Darden nor Baruch considered the matter of sale concluded by the paper of April 11th is further emphasized by the language of the acceptance upon the part of Baruch. After altering the offer of purchase, he says: "I hereby accept the foregoing offer and agree that a contract of sale covering said property will be immediately prepared." This language is amenable to but one construction. It means a present acceptance of the offer to purchase, conditioned upon a future contract consummating the sale of the property.

After approving the language of Judge Harrison in *Boisseau* v. *Fuller, supra,* Mr. Chief Justice Prentis, in *Atlantic Coast Realty Co.* v. *Robertson's Ex'r,* 135 Va. 253, 116 S. E. 478, said: "This rule of law, presumption, or rule of evidence, is certain and well established. Expressed differently, it may be said that when it is shown that the parties intend to reduce a contract to writing, this circumstance creates a presumption that no final contract has been entered into, which requires strong evidence to overcome."

This brings us to a consideration of the question of the acceptance by Darden of the counter offer of Baruch. The change made by Baruch in the offer of purchase was a material one. Without the acceptance of Darden, the proffered contract, as altered by Baruch, was a nullity. To give it vitality, the acceptance of Darden was essential.

Plaintiff testifies positively that Darden did agree to the change made by Daruch. Barden, who was introduced by the plaintiff as a witness, testifies positively that he did not agree to the change. In this statement he is corroborated by two witnesses. The burden was upon the plaintiff to show an acceptance of the altered contract by Darden. This was a question of fact which the court properly submitted to the jury. Upon this issue the jury found against the plaintiff. This finding was conclusive of the question of acceptance.

Whether or not the court erred in granting or refusing instructions is immaterial, as we are of opinion that the written instrument upon which plaintiff based his claim for the recovery of commissions is not a valid and binding contract between the parties.

For these reasons, the judgment of the trial court will be affirmed.

*Affirmed.*