## R. E. CRUMMER & CO. v. NUVEEN et al.

### No. 8519.

Circuit Court of Appeals, Seventh Circuit.

Feb. 8, 1945.

Herbert C. De Young, of Chicago, Ill., for appellant.

Perry M. Chadwick and Roscoe C. Nash, both of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

The plaintiff appeals from an order dismissing its complaint in a contract action for failure to state a claim upon which relief could be granted.

4

The original bill of complaint, after necessary jurisdictional averments, alleged that on November 25, and 29, 1941, defendants, desiring to buy certain bonds at par, caused publication of a notice[1] in a daily and weekly paper circulated among municipal bond dealers. The complaint further alleged that plaintiff was, in November, the owner and holder of $458,829 principal amount of the bonds, dated June 1, 1940, and due June 1, 1970; that defendants had arranged with the Manufacturers Bank of New York to deposit the funds necessary to cover all such bonds presented for payment pursuant to the terms of the notice; that plaintiff in reliance on the notice delivered its bonds to the bank on December 11, 1941, but that the bank refused to pay the principal amount as provided by the notice; that plaintiff attempted to sell the bonds to other parties at par but that the bid for them was substantially less than par, resulting in damages to it of $35,000.

Defendants moved to dismiss this complaint on the grounds that the advertisement was merely a solicitation for offers to sell the bonds and not an offer to purchase them; that even if it did constitute an offer, such offer was made by the Board of County Commissioners of Okeechobee County, and not by defendants; that if it was an offer, the advertisement showed on its face that it had expired prior to December 11, 1941; that it was not accepted according to its terms; and that the allegations were insufficient to establish that plaintiff sustained any damages.

The District Court sustained defendants' motion to dismiss, stating in a memorandum opinion accompanying the order that the complaint did not show an acceptance of the alleged offer within a reasonable time, inasmuch as the purported acceptance did not occur until four days after the attack on Pearl Harbor and our declaration of war, events which caused fluctuations on the securities market. It also stated that it was doubtful that the advertisement constituted a firm offer to buy the bonds, citing Williston on Contracts, § 27, and Page on Contracts, §§ 84 and 85.

Plaintiff filed an amended complaint with additional allegations that the County Board acted as agents for defendants in making the alleged offer to purchase its bonds; that on December 9, 1941, plaintiff telephoned the Manufacturers Bank to inquire whether it was still purchasing the bonds pursuant to the offer, and was informed that the offer was still open, that the bonds were still being purchased and that funds were on deposit to be used in payment; that plaintiff in reliance on the terms of the offer sent a special messenger from Chicago to New York and delivered its bonds, but that at the direction of defendants the bank refused to accept the bonds or to purchase them as provided in the notice. Defendants again moved to dismiss, on three of the grounds previously urged against the original complaint, that the advertisement was not an offer to purchase, that even if it were, it showed on its face that it had expired prior to December 11, and that it had not been accepted by plaintiff according to its terms. The District Court again sustained the motion to dismiss, for the reasons given in its memorandum accompanying dismissal of the original complaint.

Plaintiff again amended its complaint with respect to the publication of the advertisement in the weekly paper by the request of defendants, and adding to the allegation as to the authority of the officer of the Manufacturers Bank who advised on December 9 that the offer was still open, and so far as he could then state, would continue open for several days, and that funds received from the defendants were

[1] "Notice to Bondholders
"Okeechobee County, Florida
"Road and Bridge Refunding Bonds
"Notice Is Hereby Given, by the Board of County Commissioners of Okeechobee County, Florida, as follows: That all notices which may have been heretofore given with respect to the call for redemption on December 1, 1941, of the following bonds of Okeechobee County, Florida:
"* * *
are hereby rescinded and declared to be ineffective.
"For the convenience of bondholders who may wish to surrender their bonds, the Board of County Commissioners of Okeechobee County, has arranged to provide funds for the purchase of the above described bonds at par and interest to December 1, 1941. Holders may send their bonds to The Manufacturers Trust Company for surrender pursuant to such terms.
"Done, Ordered and Adopted at a meeting of County Commissioners of Okeechobee County on the 24th day of November, 1941.
"C. F. Walker,
Chairman."

on deposit to be used for the purchase of the bonds. It also amended the allegation as to transmission of the bonds, stating that after the telephone conversation of December 9, it was unable to obtain transportation for its messenger on that date but sent him with the bonds on the following day, delivering them at the opening of business on December 11, 1941. Defendants again moved to dismiss, for failure to state a claim upon which relief could be granted, and the court again sustained the motion for reasons stated in its original memorandum.

Since the only ground stated by the court for dismissal of the complaint and amendments thereto was that the complaint did not show acceptance by the plaintiff within a reasonable time, we turn first to this issue, assuming arguendo that the advertisement did constitute an offer and not merely a solicitation for offers, as contended by appellees. In dismissing the complaint on defendants' motion, the District Court held as a matter of law that the offer, if any, was not accepted within a reasonable time, taking judicial notice of the effect on the securities market of the events which occurred during the twelve days which intervened between the last alleged offer and its acceptance. He did not reconsider this ruling after amendment of the complaint to allege statement by an officer of the bank that the offer was still open December 9, and would, so far as he knew, continue open for several days, and that funds were still on deposit to cover purchases.

■ While it is true that an offer lapses by expiration of time, when no time is fixed for acceptance, this doctrine does not apply when the parties treat the offer as continuing in force. "An offer remains in force as long as it is treated by both parties as being in force, even though what would otherwise be a reasonable time, has elapsed." Page on Contracts, 2nd Ed., Vol. 1, § 139, and cases there cited. Appellees call attention to the fact of appellant's telephone inquiry as showing that it thought then that the offer had already lapsed. Whether this was true or not, it became immaterial when appellant was informed by defendants' alleged agent that the offer was still in effect, and would remain so for several days, so far as he knew. We are convinced that the District Court was in error in holding as a matter of law, under the allegations of the complaint as amended, that the offer, if any, was not accepted within a reasonable time.

■ The memorandum indicated doubt on the part of the court that the advertisement constituted a firm bid to buy the bonds, and although the court did not pass on this issue, appellees are entitled to raise it here to support the judgment. The court referred to illustrations of offers to negotiate cited in Page on Contracts, § 85, as covering the facts here alleged. We think these facts more nearly resemble the illustrations of offers contemplating legal liability set forth in section 86: "If the offer made by means of advertisements, circulars and the like shows an intent to assume legal liability thereby, such offer may on acceptance form a contract. In some cases the quotation of prices is so made as to indicate a promise to sell at such price; and such quotation is then treated as an offer if otherwise sufficient." Also pertinent is the statement in 12 Amer. Jur. on Contracts, §§ 28 and 29: "A general offer must be distinguished from a general invitation to make an offer. * * * A mere quotation of price must be distinguished from an offer. From the nature of the subject, the question whether certain acts or conduct constitute a definite proposal upon which a binding contract may be predicated without any further action on the part of the person from whom it proceeds or a mere preliminary step which is not susceptible, without further action by such party, of being converted into a binding contract depends upon the nature of the particular acts or conduct in question and the circumstances attending the transaction. It is impossible to formulate a general principle or criterion for its determination. Accordingly, whether a communication naming a price is a quotation or an offer depends upon the intention of the owner as it is manifested by the facts and circumstances of each particular case.

"* * * A binding obligation may even originate in advertisements addressed to the general public."

■ Examining the alleged offer in the light of these general principles, we note the pertinent language: "For the convenience of bondholders who may wish to surrender their bonds, the Board * * * has arranged to provide funds for the purchase of the above described bonds at par and interest to December 1, 1941. Holders

6

may send their bonds to the Manufacturers Trust Company for surrender pursuant to such terms." We think the court might well have found that these two sentences, read together, constituted an offer to purchase the bonds. The terms were complete —no limit being placed on the amount of the bonds to be purchased: the price to be paid was fixed—par with interest to December 1; the place of purchase was specified—holders wishing to accept the offer might send their bonds to the designated bank for surrender pursuant to the terms specified. We cannot believe that the ordinary business man could be expected to read the advertisement as an invitation to send bonds from wherever he might be to New York on the chance that when they got there the advertiser would accept his offer to enter into negotiations for the purchase of the bonds. Rather, we think the wording of the advertisement is such as to show "an intent to assume legal liability thereby."

Appellees rely upon a test laid down in Williston on Contracts, Revised Edition, vol. 1, § 27: "The only general test which can be submitted as a guide is an inquiry whether the facts show that some performance was promised in positive terms in return for something requested." We agree with appellant that the advertisement here involved satisfies that test. A promise to purchase bonds sent in to the bank for surrender in accordance with the positive terms specified as to price and place of performance is implicit in the words of the advertisement. Those words were, of course, chosen by appellees, and if any ambiguity exists as to their meaning, it must be resolved against their composer.

■■■■ We find no merit in appellees' contention that the complaint does not show acceptance of the offer, if any, according to its terms. Their contention as to this is that the offer, if any, was to "purchase the above described bonds at par and interest to December 1, 1941," which means, to purchase the bonds with December 1, 1941, and subsequent coupons attached. We agree with appellant that the reasonable meaning of this is that interest would be paid only to December 1, 1941. However, even if there were any question as to this, which we do not concede, it certainly was not an issue to be decided as a matter of law on a motion to dismiss.

We are convinced that the District Court erred in its action in dismissing the complaint on motion of the defendants, and the judgment is, therefore, reversed, and the cause remanded for further proceedings.