STRICKLAND v. SELLERS.

Civ. A. No. 1189.

District Court, N. D. Texas,
Fort Worth Division.

April 3, 1948.

H. J. Loe, of Fort Worth, Tex., for plaintiff Strickland.

Harris Brewster, of Fort Worth, Tex., for intervenor H. J. Loe.

Marvin Brown, Jr., of Fort Worth, Tex., for defendant Sellers.

DOOLEY, District Judge.

The plaintiff, Floyd L. Strickland, employed H. J. Loe as his lawyer to file this suit against the defendant, Ray Sellers for treble the amount of an overcharge, plus attorney's fees, based on the sale of an automobile from defendant to plaintiff in 1945, at an alleged price over the legal maximum schedule, as fixed under the Emergency Price Control Act of 1942, as amended.[1] A memorandum bearing date May 24, 1946 addressed to Loe and signed by Strickland states their agreement, as follows: "I hereby employ you to represent me in presenting against Mr. Ray Sellers, Fort Worth auto dealer, my claim for overcharge on purchase price of my 1941 Ford car, which I purchased from him in October 1945. Your pay shall be 1/3 of any sums collected whether by compromise or by court procedure. I will pay court costs if any involved."

The plaintiff's lawyer, before filing suit, demanded payment of the alleged overcharge only in a letter to defendant dated May 28, 1946, which was ignored, and the body of said letter is quoted below.[2]

---

[1] The particular part of the Act, providing for actions such as plaintiff's suit herein, read at the time of said sale, as follows: "If any person selling a commodity violates a regulation, order, or prices schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, * * * bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50 as the court in its discretion may determine." Title 50 U.S.C.A.Appendix, § 925(e).

[2] "On or about 30 November 1945, Mr. Floyd Strickland of Roanoak, Texas, purchased a 1941 Ford Tudor sedan at a price exceeding $2078.00. Payment in

The suit was filed shortly afterwards and over a period of several months counsel for the respective parties had some bootless negotiations for a settlement. Later still the defendant, acting behind the back of plaintiff's lawyer, made a direct settlement of the suit with the plaintiff, and took from him a written receipt and release.

Then next the plaintiff's lawyer filed a plea of intervention in this suit, alleging that the defendant or his lawyers had knowledge of intervenor's fee interest in any collection on plaintiff's claim at the time defendant went over intervenor's head to make the aforesaid settlement, and sued to recover one-third of the trebled overcharge, plus attorney's fees, or in the alternative one-third of the amount paid in said settlement, by judgment against the defendant.

The plaintiff, intervenor and defendant, at all pertinent times, have been citizens of Texas, and the amount in controversy by intervenor's claim is much less than $3,000.00.

The intervention claim has been heard on the pleadings, oral testimony and documentary evidence. The proof shows clearly enough that the intervenor well earned a fee, but has been left in the lurch by the settlement between the plaintiff and defendant. The intervenor's allegation that the defendant was aware of his fee contract, however, is without any outright support in the evidence. The intervenor relies mainly on the circumstance of the defendant making a short cut settlement with the plaintiff, independently of respective counsel, as a sign of his knowledge and purpose to defeat the fee contract, and his consequent liability to intervenor.

When the trial closed, the Court suggested a doubt of proper jurisdiction, and in the meantime that question has been under advisement in connection with briefs filed by intervenor's counsel.

The intervenor contends that he has assignee rights sufficient to bring his claim within the jurisdiction of the court as an ancillary proceeding in the main suit. This Court undoubtedly had jurisdiction of the main suit regardless of the parties' citizenship or the amount in controversy.[3] The intervenor's theory of jurisdiction leads to a double inquiry, that is, first the intrinsic assignability of plaintiff's claim, and, second, the sufficiency, in any event, of the intervenor's fee contract to be a partial assignment of plaintiff's claim.

Now I come to the nature of plaintiff's claim. The statute in question says, "the person who buys such commodity" may bring an overcharge action. The question is somewhat unsettled, but in my view this suit is for the recovery of a penalty.[4] This brings to attention the reciprocal relation between rights of action which survive and rights of action which are assignable. Ordinarily survivability is necessary to assignability.[5] The general rule, unless the statute has a contrary provision, is that statutory claims, either penal,[6] or distinctly personal to certain individuals[7], will not survive to the heirs or representatives of a decedent, and so are not assignable. This has been held true in actions under the very statute now in question.[8] The same proposition is true of federal statutes generally creating rights of action within a class which does not survive at common law, as for example, the Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and the Patent

---

excess of the ceiling price by approximately $950.00 was made to you at the time by the purchaser. Demand is hereby made for the repayment of the sum of $950.00 as provided by law. Should you care to dispose of this matter without the necessity of legal process, we will be glad to hear from you by Monday, 3 June, 1946."

3 Powell v. Rhine, D.C., 71 F.Supp. 953.

4 Bowles v. Griffin, 5 Cir., 151 F.2d 458; Thierry v. Gilbert, 1 Cir., 147 F.2d 603; Bowles v. Farmers Nat. Bank, 6 Cir., 147 F.2d 425.

5 6 C.J.S., Assignments, § 30; 1 Am. Juris., Assignments, Sec. 80.

6 Ex parte Francis Schrieber, 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65; Wogahn v. Stevens, 236 Wis. 122, 294 N.W. 503, 133 A.L.R. 1033.

7 6 C.J.S., Assignments, § 37.

8 Bowles v. Farmers Nat. Bank, 6 Cir., 147 F.2d 425; Kamoses v. Martin, D.C., 6 F.R.D. 585.

Laws, 35 U.S.C.A. § 1 et seq.,[9] and, of course, likewise in the field of State statutes.[10]

■ The statutory authority to allow an attorney's fee in suits of this kind does not mean that the plaintiff's lawyer owns that part of the liability, but instead, clearly the whole cause of action is for "the person who buys such commodity", so that such plaintiff directly in his own right recovers the attorney's fee allowed in the judgment, as that much measure of indemnity.[11]

■ My conclusion is that the intervenor did not, by the words of the law, own an interest in the statutory cause of action, nor could he have acquired such ownership by assignment from the plaintiff, as said statute did not expressly authorize such an assignment.

■ If, however, the cause of action were assignable, that would still leave for decision the legal nature and effect of the fee contract between plaintiff and intervenor. The memorandum does not purport to fix any contractual lien on the cause of action or judgment. It is quite doubtful that same constitutes either a legal or an equitable assignment under the decisions of the Texas courts,[12] but at most the contract was only a contingent equitable assignment which stood in abeyance pending the outcome of the suit and remained ready to then fasten on any recovery fund or judgment.[13] The fee agreement is scarcely more than a contingent promise to pay a measure of money, without any word of assignment security, and, whatever else may be said, I am satisfied that the contract did not pass at once a fixed partial assignment of the plaintiff's substantive cause of action, nor does now give intervenor any such definitive right or interest in the cause of action as would be necessary to uphold the jurisdiction of this Court.

The intervenor's first ground of claim is that he has the requisite title and interest to sue directly on the statutory cause of action, practically in plaintiff's shoes, except with his recovery limited to one-third of the penalty sum plus the attorney's fee allowed by the court, and if, contrary to my ruling, that should be a sound theory, this Court presumably would have jurisdiction of such claim, but, whether or not it is a sound theory, the intervenor in his brief apparently elects to stand on his alternative ground of claim for a recovery equal to one-third of the sum of $300.00 paid by defendant to plaintiff in the settlement. The said alternative claim puts the intervenor in the attitude of ratifying the settlement. That claim simply says that part of the settlement money belonged to intervenor, but the defendant made a misdirected payment of it, and still owes such amount to the intervenor. With all parties meeting in the settlement, there is no longer a main action subsisting, for the purpose of any ancillary remedy. In other words, the intervenor simply leaves himself with a claim against the defendant, but a quasi-contractual, not a statutory, claim, and with no ground of federal jurisdiction.

■ The intervenor relies mainly on the case of Woodbury v. Andrew Jergens Co., 2 Cir., 69 F.2d 49, 50. There are several clear distinctions. The litigation was in New York. The two attorneys had been counsel for the plaintiff. One of them had been an attorney of record, and the other one rendered services under an oral agreement, but had not appeared as an attorney

---

9 Michigan Cent. R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417, Ann.Cas.1914c, 176; National Labor Relations Board v. Hearst, 9 Cir., 102 F.2d 658, 664; Van Choate v. General Electric Co., D.C., 245 F. 120.

10 Barringer v. Jefferson Standard Life Ins. Co., D.C., 9 F.Supp. 493.

11 Keen v. Mid–Continent Petroleum Corporation, 63 F.Supp. 120, 141; Clabaugh v. Southern Wholesale Grocers Ass'n, C.C., 181 F. 706, 708; 7 C.J.S., Attorney and Client, § 163.

12 Wheeler v. Fronhoff, Tex.Civ.App., 270 S.W. 887; American Cotton Co. v. Simmons, 39 Tex.Civ.App. 189, 87 S.W. 842; Patterson v. Citizens' Nat. Bank, Tex.Civ.App., 236 S.W. 130; Central Nat. Bank v. Latham & Co., Tex.Civ.App., 22 S.W.2d 765.

13 Galveston, H. & S. A. R. Co. v. Ginther, 96 Tex. 295, 72 S.W. 166; C. W. Hahl & Co. v. Hutcheson. 196 S.W. 262; Caldwell v. Stalcup, 166 S.W. 110; 7 C.J.S., Attorney and Client, § 187.

of record. The first, as attorney of record, was armed with a very strong charging lien by statute, which made it impossible to dispose of the suit finally without his consent. There is no similar Texas statute, and in this State, without some special contract, a lawyer, between himself and client, except the conditional lien under the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq., has only the common law lien. The second lawyer in said suit, alleged an oral fee contract, which the court held would be an equitable assignment pro tanto of the client's cause of action. The same cannot be said of the present fee contract. The Court in that case also held that the lawyers "were in effect parties plaintiff". I would not say that of the present intervenor. Somewhat paradoxically the actual ruling in that case was not to sustain compensation for the lawyers, but to reaffirm a prior decision denying the lawyers any recovery.

A case much closer in point on the facts, and negativing federal jurisdiction, is German v. Universal Oil Products, 8 Cir., 77 F.2d 70. The same case in the trial court was Universal Oil Products Co. v. Standard Oil Co., D.C., 6 Fed.Supp. 37. That case is regarded as a sound precedent with forceful similarity to the record herein, and I will follow it.

One other point may be mentioned. When a suit in Federal court, after gathering some appendages by ancillary jurisdiction, is terminated, and said main suit was the only subject matter of original federal jurisdiction, the court has discretion, upon considerations of convenience, complications or the fitness of circumstances, to dismiss the ancillary proceedings and remit the parties to the State jurisdiction.[14] This flexibility is quite suitable here, for if this Court has any jurisdiction of the intervenor's suit, it is tenuous at best, and covers only part of his claim, and at that not the part highest in the favor of intervenor, and all in all I do not doubt that it is best for the intervenor himself to go to the State courts where he will have a sure footing of jurisdiction for all of his claim, and will be saved the doubts and possible misspent time attending further proceedings on his claim in this Court.

The intervenor's suit, and also the main suit herein, which has been settled, will be dismissed, but without prejudice to the claim of intervenor.

---

[14] Doggett v. Deauville Corporation, 5 Cir., 148 F.2d 881; Sherry v. Oceanic Steam Nav. Co., C.C., 72 F. 565; Maryland v. Robinson, D.C., 74 F.Supp. 279.