UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

POWER SERVICES, INCORPORATED,
              *Plaintiff-Appellant,*

              v.

MCI CONSTRUCTORS, INCORPORATED;
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA,
              *Defendants-Appellees.*

No. 00-1358

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-97-927-A)

Argued: November 3, 2000

Decided: February 27, 2001

Before WILKINSON, Chief Judge, and
WILKINS and LUTTIG, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Robert John Sciaroni, BELL, BOYD & LLOYD,
P.L.L.C., Washington, D.C., for Appellant. Charlie Chong Ho Lee,
MOORE & LEE, L.L.P., McLean, Virginia, for Appellees. **ON
BRIEF:** Richard O. Wolf, MOORE & LEE, L.L.P., McLean, Vir-
ginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Power Services, Inc. appeals an order of the district court dismissing its action against MCI Constructors, Inc. and MCI's surety (collectively, "Appellees") on the basis that the parties had reached a settlement. Because the record contains unresolved factual disputes relating to the existence of a settlement agreement, we vacate the judgment of the district court and remand for further proceedings.

### I.

This appeal arises from Power Services' suit against Appellees to collect payment for services rendered. It is undisputed that counsel for Power Services, Robert J. Sciaroni, and counsel for Appellees, Charlie C. H. Lee, reached a settlement and reduced it to writing. The parties agree on some of the facts relating to their negotiations but disagree as to others.

The parties concur that negotiations took place on February 21, 2000 when Sciaroni and two Power Services executives went to Lee's office for depositions. Before the depositions began, Lee asked Sciaroni if he would agree to settle the case for $50,000. Sciaroni replied that he would prefer $60,000, and Lee endorsed this figure. The two Power Services executives present for depositions ratified this proposal and then left Lee's office. The attorneys prepared a written settlement agreement and faxed it to their clients.

It is undisputed that Sciaroni was authorized to sign the written agreement on Power Services' behalf and that he did so before leaving Lee's office. The parties disagree, however, concerning whether Lee had authority to enter into a settlement agreement on behalf of MCI and its surety, National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union). According to Sciaroni, Lee

stated on multiple occasions that their settlement agreement required separate approval from MCI and National Union. In contrast, Lee asserts that National Union tendered settlement authority to MCI and that the president of MCI approved the $60,000 settlement before the attorneys drafted the written agreement.

Officials at MCI and National Union signed the settlement agreement the day it was drafted, but Sciaroni was not informed of this. According to Sciaroni, when he called Lee the next day and asked if Lee's clients had signed the agreement, Lee said the matter was "still under review." J.A. 133 (internal quotation marks omitted). Lee, however, alleges that he merely told Sciaroni that he did not know whether the agreement had been signed. At that point, the parties agree, Sciaroni told Lee that Power Services was withdrawing its settlement offer.

Appellees subsequently moved to dismiss this action, alleging that the parties had reached a settlement. The district court conducted a hearing at which the attorneys spoke as officers of the court but did not testify under oath. After the hearing, the court found that the parties had entered into a binding oral agreement. Further, the court opted to enforce this agreement and therefore dismissed Power Services' suit.

## II.

Power Services argues that the district court erred in dismissing this action, contending that a genuine issue of material fact exists regarding whether the parties entered into a binding agreement. We agree that unresolved factual disputes in the record preclude us from affirming the judgment of the district court.

Under Virginia law (which the parties agree is controlling here), "settlement agreements are treated as contracts subject to the general principles of contract interpretation." *Byrum v. Bear Inv. Co.*, 936 F.2d 173, 175 (4th Cir. 1991). A contract is formed when the offeree communicates its acceptance to the offeror. *See Levy v. Beach Inv. Corp.*, 181 S.E.2d 607, 607-08 (Va. 1971) (per curiam). An offer that is not supported by consideration may be revoked any time before the offeree communicates its acceptance. *See Chang v. First Colonial*

*Sav. Bank*, 410 S.E.2d 928, 931 (Va. 1991); *Chittum v. Potter*, 219 S.E.2d 859, 864 (Va. 1975).

When asked to enforce a settlement agreement, a district court should engage in two distinct inquiries. "First, the court should ascertain whether the parties have in fact agreed to settle the case. Once the court determines that the parties have agreed to settle the case, then the court must discern the terms of that settlement." *Moore v. Beaufort County, N.C.*, 936 F.2d 159, 162 (4th Cir. 1991). If either inquiry requires resolution of factual disputes, the court must conduct a "plenary evidentiary hearing." *Columbus-America Discovery Group v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 298 (4th Cir.), *cert. denied*, 121 S. Ct. 277 (2000); *Alexander v. Indus. of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir. 1990).

Here, the record contains factual disputes that prevent us from upholding the judgment of the district court. These disputes involve Lee's communications to Sciaroni concerning (a) what Lee was told by his clients and (b) whether Lee had authority to bind both Appellees to a settlement agreement.

The district court found that executives from MCI and National Union accepted Power Services' offer before Sciaroni withdrew it, but it is unclear whether this acceptance was ever communicated to Sciaroni. It is undisputed that Sciaroni did not learn until after withdrawing his offer that the Appellees' executives had already signed the written agreement. Moreover, the parties disagree about whether Appellees' earlier oral acceptance was relayed to Sciaroni, an issue the district court left unresolved. *See* J.A. 204 ("Sciaroni was aware that Lee spoke with his clients on the telephone after they received the fax[ed agreement], and Lee never indicated that there were any problems ....").

If Lee never told Sciaroni what his clients had said, then no contract was formed unless Lee himself had authority to accept the offer on Appellees' behalf. *See Columbus-America Discovery Group*, 203 F.3d at 298 (discussing attorneys' apparent authority to settle cases). Sciaroni alleges that Lee expressly disavowed such authority, but Lee denies this. Once again, the district court made no finding on this

issue. Consequently, the record does not establish that Lee was authorized to enter into a binding settlement agreement.

### III.

In sum, factual disputes regarding the information conveyed to Sciaroni prevent us from upholding the finding of the district court that the parties reached an oral agreement. Accordingly, we vacate the judgment of the district court and remand this case for resolution of these factual questions and for any other proceedings that may be necessary.

*VACATED AND REMANDED*